**In re DEL–VAL FINANCIAL CORP. SECURITIES LITIGATION.**

**This Document Relates To All Actions.**

**No. MDL 872.**

United States District Court,
S.D. New York.

July 29, 1994.

Proskauer Rose Goetz & Mendelsohn, New York City (Richard L. Spinogatti, of counsel), for defendant Deloitte & Touche.

Miller Faucher Chertow Cafferty and Wexler, Chicago, IL (Marvin A. Miller, of counsel), and Ross & Hardies, New York City (Kenneth Zuckerbrot, Philip Goldstein, of counsel), for defendants Del–Val Financial Corp., Kenbee Management, Inc., Herbert L. Golden, Bernard M. Katz, Estate of Stuart T. Parson, Ben S. Read, Jr., Myron Rosenberg, Frederick E. Smithline, James Goldstein, Joel Zbar and Roger Stern.

## OPINION AND ORDER

WILLIAM C. CONNER, District Judge.

This class action suit is brought on behalf of all individuals who purchased common stock of Del–Val Financial Corp. ("Del–Val") between March 10, 1989 and October 19, 1990, and all persons who owned Del–Val common stock on October 22, 1990. The Complaint alleges violations of Sections 11, 12(2), and 15 of the Securities Act of 1933, Sections 10(b) and 20(a) of the Securities Exchange Act of 1934, and the common law. Plaintiffs assert claims against Del–Val, a real estate investment trust; Kenbee Management, Inc. ("Kenbee"), Del–Val's manager; former Del–Val and Kenbee officers and directors; Interstate/Johnson Lane Corp. ("I/JL"), Del–Val's underwriter; and Deloitte & Touche ("Deloitte"), Del–Val's independent auditor.

Deloitte and Del–Val have filed cross-claims against each other for contribution in the event that either is found liable to plaintiffs.

Plaintiffs reached a partial settlement ("Settlement") with Del–Val, Kenbee, and most of the officers and directors (collectively "Settling Defendants"), which this Court approved on December 3, 1993; neither Deloitte nor I/JL participated in the Settlement. Although the cross-claims between Del–Val and Deloitte are still pending,[1] as part of the Settlement, plaintiffs agreed to indemnify the Settling Defendants for any judgment which may be entered against them on Deloitte's cross-claim.[2]

Currently before the Court is Settling Defendants' motion to disqualify the law firm Proskauer Rose Goetz & Mendelsohn ("Proskauer") as counsel for non-settling defendant Deloitte. For reasons explained below, the motion is denied.

## BACKGROUND

This case involves a unique conflict of interest issue involving Edward Brodsky, Esq., a former partner of Spengler, Carlson, Gubar, Brodsky & Frischling ("Spengler Carlson"), who joined Proskauer in mid–1992, and former partners and associates from Shea & Gould, who recently joined Proskauer in early 1994. Mr. Brodsky represented the Settling Defendants in connection with an investigation by the Securities & Exchange Commission ("SEC") in 1991–1992; he did not continue this relationship after he joined Proskauer. The former Shea & Gould attorneys have represented Deloitte for over twenty years, including representation in the instant case; these attorneys did bring Deloitte as a client with them when they joined Proskauer a few months ago. The issue is whether these former Shea & Gould attorneys, now at Proskauer, must be disqualified from representing Deloitte because of Mr. Brodsky's prior representation of the Settling Defendants. The following uncontested facts are taken from the lawyers' submissions and accompanying affidavits.

---

1. There is a pending motion to dismiss these cross-claims but it is not yet fully submitted.

2. Specifically, the plaintiff class will reduce the amount of judgment obtained against Deloitte or I/JL by the greater of (1) the consideration paid by the Settling Defendants or (2) the amount of any judgments which Deloitte or I/JL shall obtain against the Settling Defendants for their cross-claims for contribution.

*Mr. Brodsky's Prior Representation of the Settling Defendants*

In October, 1990, the Settling Defendants faced a barrage of lawsuits, claims, and administrative and governmental investigations arising from both liquidity problems and Del–Val's suspension of a previously-declared dividend; of principal concern was an investigation by the SEC. In early 1991 the Settling Defendants retained the law firm of Spengler Carlson, of which Mr. Brodsky was a partner, to represent it in connection with the SEC investigation; their interest in Spengler Carlson was prompted by Mr. Brodsky's reputation in the securities field. Although Larry Hirsch was the attorney who appeared with the Settling Defendants before the SEC, the Settling Defendants understood that Mr. Brodsky was the partner in charge.

In or about the middle of 1992, Spengler Carlson dissolved. Mr. Brodsky then joined Proskauer, and Mr. Hirsch joined the law firm Reid & Priest. The Settling Defendants decided to continue their relationship with Mr. Hirsch at Reid & Priest rather than with Brodsky; hence Mr. Brodsky's relationship with the Settling Defendants ended at the time he joined Proskauer. Mr. Brodsky did not retain control over any documents or files concerning this representation before the SEC, and at no time did he transport any such documents to Proskauer.

*Deloitte, Shea & Gould, and Proskauer*

Shea & Gould's relationship with Deloitte dates back to 1973, when it began representing Touche Ross & Co., a predecessor of Deloitte. Leon P. Gold, a partner at Shea & Gould, was principally responsible for the development of this relationship and has represented Deloitte in hundreds of matters; Richard L. Spinogatti has participated in the majority of these matters, first as an associate and then as partner. Not surprisingly, Shea & Gould was retained to represent Deloitte in the instant matter in 1990, with Mr. Spinogatti as the assigned partner in charge of handling the case. The Shea & Gould attorneys have already spent several thousand hours on the instant case, and discovery has involved the production of hundreds of thousands of documents and dozens of days of deposition testimony.

On January 27, 1994, after practicing together for more than thirty years as a prominent New York law firm, the partners at Shea & Gould voted to dissolve the firm. Upon learning of this dissolution, Deloitte specifically requested that Mr. Gold continue to represent it in the instant matter. Hence when Messrs. Gold and Spinogatti (along with eighteen other Shea & Gould attorneys) joined Proskauer on February 28, 1994, Deloitte was among the clients they brought with them.

Proskauer processed these clients into its systems and performed conflict of interest procedures on thousands of names, including the names of the Settling Defendants. However, Mr. Brodsky's prior representation of the Settling Defendants was not revealed, and none of the attorneys representing Deloitte knew of Brodsky's prior representation. Hence it was determined that there were no conflicts of interest, and on March 9, 1994, the parties to the instant case executed a Stipulation to substitute Proskauer as attorneys for Deloitte in place of Shea & Gould.

*Discovery of Prior Representation*

On Friday, May 13, 1994, approximately two months after Proskauer was substituted as counsel for Deloitte, a Proskauer associate commenced the deposition of defendant Frederick E. Smithline, Esq., Del–Val's Chairman of the Board, in a conference room at Proskauer. During a morning break, Mr. Smithline used the telephone and apparently noticed that Mr. Brodsky was listed on Proskauer's firm directory. Mr. Smithline communicated this to Mr. Kenneth Zuckerbrot, who currently represents the Settling Defendants and was also present at the deposition. While Mr. Smithline's deposition continued without mention of this discovery, later that afternoon Mr. Zuckerbrot telephoned Mr. Spinogatti, informing him of the conflict and requesting a stay of discovery; Mr. Zuckerbrot confirmed this conversation by letter.

On Monday, May 16, Mr. Spinogatti responded by letter to Mr. Zuckerbrot explaining that none of the attorneys representing Deloitte had been aware of Mr. Brodsky's

prior representation; that Mr. Brodsky was only peripherally involved in the representation and did not recall the names of most of the Settling Defendants much less the substance of this prior representation; that Mr. Brodsky had not discussed his prior representation with any attorney at Proskauer; and that Proskauer was implementing screening procedures to prevent inadvertent disclosure of confidential information concerning the Settling Defendants.

That same day Proskauer instituted such screening procedures, including: (1) prohibiting any attorneys representing Deloitte from discussing the instant case with any former Spengler Carlson attorneys; (2) prohibiting any former Spengler Carlson attorneys from discussing any matters relating to the Settling Defendants with any other attorney at Proskauer; and (3) keeping all documents relating to the instant case in a locked and limited access room and prohibiting any attorneys representing Deloitte from providing any documents to any former Spengler Carlson attorneys.

The next day, May 19, 1994, Mr. Zuckerbrot responded to Mr. Spinogatti by letter, informing him that Settling Defendants intended to file a motion to disqualify Proskauer as counsel for Deloitte, and that discovery could not be continued until this matter was resolved by the Court.

## DISCUSSION

■ An attorney may not knowingly reveal a confidence of his client or use a confidence to the disadvantage of his client. *Evans v. Artek Systems Corp.,* 715 F.2d 788, 791 (2d Cir.1983); ABA Com. Ethics and Professional Responsibility, Code of Professional Responsibility, DR 4–101(B). The Second Circuit has explained that based on this principle, an attorney may be disqualified from representing a client in a particular case if: (1) the moving party is a former client of the adverse party's counsel; (2) there is a substantial relationship between the subject matter of the counsel's prior representation of the moving party and the issue in the present lawsuit; and (3) the attorney whose disqualification is sought had access to, or was likely to have had access to, relevant privileged information in the course of his prior representation of the client. *Id.* Of course, disqualification is a case-by-case determination, and the moving party bears a heavy burden of proving facts showing that disqualification is warranted. *Id.* at 794. Indeed, unless the underlying trial will be tainted, "courts should be quite hesitant to disqualify an attorney." *Board of Education v. Nyquist,* 590 F.2d 1241, 1246 (2d Cir.1979). Ultimately the client's right to choose counsel must be balanced against the goal of preserving the integrity of the adversary process:

> [T]here is a particularly trenchant reason for requiring a high standard of proof on the part of one who seeks to disqualify his former counsel, for in disqualification matters we must be solicitous of a client's right freely to choose his counsel—a right which of course must be balanced against the need to maintain the highest standards of the profession.

*Evans,* 715 F.2d at 791. In the instant case we believe that this balance tips in favor of Deloitte's right to choose Proskauer as its counsel.

■ Our analysis focuses initially on whether Mr. Brodsky himself would be disqualified from representing Deloitte. It appears that (1) Mr. Brodsky represented the Settling Defendants in connection with an SEC investigation in 1991–92; (2) there is a substantial relationship between the issues in the SEC investigation and those in the instant case, as illustrated by the similar allegations in the two complaints;[3] and (3) because of this substantial relationship, Brodsky presumably had access to confidential information. *See U.S. Football League v. National Football League,* 605 F.Supp. 1448, 1461 (S.D.N.Y.1985) (the finding of a substantial relationship is "the basis for a pre-

---

**3.** The SEC filed a Complaint against Del–Val in July, 1993 alleging violations of the federal securities laws in connection with allegedly false and misleading statements in disclosure documents and registration statements filed with the SEC in 1989–90. The instant Complaint also alleges violations of the securities laws in connection with these same alleged false and misleading statements.

sumption that the former client of the challenged firm imparted to the firm confidential information").[4] Under these criteria, Brodsky would be disqualified from representing Deloitte in a manner adverse to the interests of the Settling Defendants.[5]

We next turn to the essential issue of the case: whether Mr. Brodsky's disqualification also renders every attorney at Proskauer, including Messrs. Spinogatti and Gold, disqualified from representing Deloitte.

■ When one lawyer at a firm possesses client confidences gained in the course of a prior representation, it is presumed that these confidences were shared with other attorneys within the lawyer's firm. *Papanicolaou v. Chase Manhattan Bank, N.A.*, 720 F.Supp. 1080, 1086 (S.D.N.Y.1989); *Huntington v. Great Western Resources, Inc.*, 655 F.Supp. 565, 572 (S.D.N.Y.1987). This presumption, however, is rebuttable. *Huntington*, 655 F.Supp. at 572. Rebuttal is permitted in order to "prevent application of an 'overharsh rule of disqualification' which would have the effect of prejudicing clients from 'securing proper representation.'" *Id.* (citing *Laskey Bros. of W.Va., Inc. v. Warner Bros. Pictures*, 224 F.2d 824, 827 (2d Cir. 1955), *cert. denied*, 350 U.S. 932, 76 S.Ct. 300, 100 L.Ed. 814 (1956)).

In the instant case, Deloitte has submitted an affidavit by Mr. Brodsky to rebut the presumption of shared knowledge. Mr. Brodsky states not only that he has never spoken to anyone at Proskauer regarding his representation of the Settling Defendants, but also that he was involved in the representation only in a peripheral sense and has no recollection of any confidential information. In addition, all of the attorneys at Proskauer working on Deloitte matters, most of whom are former Shea & Gould attorneys, have submitted affidavits asserting that prior to May 16, 1994, they had been unaware of Mr. Brodsky's representation of the Settling Defendants and have never spoken with Mr. Brodsky about this representation.

While these sworn statements alone may not be sufficient to rebut the presumption that Brodsky shared confidences of the Settling Defendants with other attorneys at Proskauer, *see Papanicolaou*, 720 F.Supp. at 1086, in the instant case the presumption is further rebutted by the screening devices implemented by Proskauer.. *See id.* at 1086 (and cases cited therein) ("A firm can sometimes rebut the presumption of shared knowledge and thus avoid disqualification if it shows that it implemented effective prophylactic measures to insulate an infected attorney."). The Settling Defendants do not appear to challenge the effectiveness of these devices to protect against future disclosures, and given that Proskauer is a firm of over 400 attorneys, 300 of whom are in the New York office, we believe that the screening devices described *supra* are adequate. Settling Defendants contend, however, that because these devices were not implemented until May 18, 1994, more than two months after Proskauer was substituted as counsel for Deloitte, they do not help rebut the presumption that confidences were disclosed during that two-month window.

While we recognize that it was Proskauer's responsibility to detect the conflict of interest before it substituted itself as counsel, the fact remains that as soon as they did discover the conflict, they immediately instituted screening devices. Hence this case is distinguishable from those in which firms were *aware* of the conflict but waited months or even years before implementing screening devices. *See, e.g., U.S. Football League*, 605 F.Supp. at

---

**4.** There is debate over whether this presumption is rebuttable. *See U.S. Football*, 605 F.Supp. at 1461–62. We find it unnecessary to address this issue because, as explained *infra*, Proskauer is not disqualified regardless of Brodsky's disqualification.

**5.** We note that there is some question as to whether the interests of Settling Defendants and Deloitte are actually adverse. While Deloitte's cross-claim for contribution against the Settling Defendants is still pending, as noted earlier,

plaintiffs have agreed as part of the Settlement to indemnify the Settling Defendants for any contribution judgment obtained by Deloitte. Hence except for litigation costs, the Settling Defendants have no monetary interest in the outcome of the actual trial. However, we assume for purposes of this motion that their interests are sufficiently adverse because, as explained *infra*, regardless of this adversity Proskauer is not disqualified.

1466 (disqualified firm waited four years before acting to mitigate a previously known conflict).

Perhaps more importantly, we can infer from circumstances of this case that any risk of inadvertent disclosure during the two-month window was minimal. Because Mr. Brodsky did not bring any files or documents concerning his representation of Settling Defendants to Proskauer, the risk that other members of the firm might see confidential documents simply never existed. The only means by which any confidences could have been disclosed would have been by direct statements by Mr. Brodsky and, as already noted, none of the attorneys working on Deloitte matters were aware of Brodsky's prior representation. We find that the combination of these circumstances, in addition to Mr. Brodsky's affidavit and the screening devices, sufficiently rebuts any presumption that Mr. Brodsky shared or will share confidential information concerning the Settling Defendants with other attorneys at Proskauer.

In sum, we find that the instant facts make it clear that there is no real danger that Deloitte may gain an unfair advantage over the Settling Defendants at trial if it is represented by Proskauer. By contrast, in view of the twenty-year relationship between Deloitte and Messrs. Gold and Spinogatti and the thousands of hours already spent on the instant matter, as balanced against the minimal monetary interest that the Settling Defendants have in the outcome of the trial, we think it would be highly unjust indeed to disqualify Proskauer.

### CONCLUSION

For the foregoing reasons, the Settling Defendants' motion to disqualify Proskauer Rose Goetz & Mendelsohn as counsel for Deloitte & Touche is denied.

**SO ORDERED.**