**BLUE PLANET SOFTWARE, INC.**
**and Alexey L. Pajitnov,**
**Plaintiffs,**

v.

**GAMES INTERNATIONAL, LLC**
**and Elorg Company, LLC**
**Defendants.**

**No. 03 Civ. 8904(SHS).**

United States District Court,
S.D. New York.

Aug. 25, 2004.

John J. Kirby, Jr., Latham & Watkins, New York City, for Blue Planet Software, Inc. and Alexey L. Pajitnov.

Glenn D. Bellamy, Greenbaum Doll & McDonald PLLC, Cinnaciti, OH, Mark Norman Mutterperl, Fulbright & Jaworski L.L.P., New York City, for Games Intern., L.L.C., ELORG, L.L.C.

*OPINION and ORDER*

STEIN, District Judge.

## I. INTRODUCTION

This action arises out of a dispute over the intellectual property rights to the world-famous video game *Tetris*. Plaintiffs Blue Planet Software, Inc. and Alexey L. Pajitnov are suing Games International, L.L.C. ("Games") and Elorg Company, LLC ("Elorg USA") claiming that they, not defendants, own those rights. Defendants Games and Elorg now bring this motion to disqualify plaintiffs' counsel John J. Kirby, Jr. and his firm Latham & Watkins LLP from continuing to represent plaintiffs due to an alleged conflict of interest emanating from Kirby's prior representation of Nintendo of America, Inc. in a separate action in 1989–90 while he was associated with another law firm. Because plaintiffs' counsel is in a position to use privileged information concerning his current adversaries due to his prior representations, thus giving his current clients an unfair advantage, defendants' motion is granted.

## II. FACTUAL BACKGROUND

This action is the latest battle over the ownership of the rights to *Tetris*. From 1989 to 1993, plaintiffs' counsel Kirby, along with others at the firm with which he was then associated—Mudge Rose Guthrie Alexander & Ferdon—represented Nintendo in an action brought against it by Tengen, Inc. centered on the property rights to *Tetris*. Prior to that lawsuit, V/O Electronorgtechnica ("Soviet Elorg"), the alleged predecessor of defendant Elorg USA, licensed its rights for *Tetris* to Nintendo. In turn, Nintendo required Soviet Elorg to provide it with substantial assistance and access to documents if Nintendo's rights were called into question by a third party. That very contingency occurred when Tengen, Inc. brought suit against Nintendo in 1989 in federal court in the Northern District of California claiming that it had certain rights to *Tetris*.

Pursuant to its contractual obligations, Soviet Elorg, and its CEO, Nikolai Belikov, provided assistance to Nintendo during that litigation, including granting Kirby and his fellow attorneys what defendants describe as "unfettered access to the confidential internal records" of Soviet Elorg. Nintendo—represented by Kirby—and Soviet Elorg engaged in joint efforts to ensure that Nintendo won the suit brought by Tengen: various letters between the two parties demonstrate their mutual interest in having the court confirm Soviet Elorg's ability to grant Nintendo the rights in question. In fact, one of those communications was marked as an "Attorney/Client Privileged Communication" and instructed that all further communications conform to particular procedures in order to maintain attorney-client confidences. Following several years of litigation, Nintendo was

successful in defending its claimed rights in *Tetris* against Tengen's claims.

At present, Kirby, now a partner at Latham, represents plaintiffs in this separate dispute over the intellectual property rights to *Tetris*, this time *against* Soviet Elorg's alleged successor, defendant Elorg USA. Because Kirby had substantial access to Elorg USA's alleged predecessor's confidential documents and discussed confidential information with Soviet Elorg's employees, defendants seek to disqualify Latham, arguing that Kirby, through his representation of Nintendo in the Northern District of California action, had access to confidential information from Elorg USA's predecessor that can be used against Elorg USA in this litigation.

## III. DISCUSSION

### A. Conflict of Interest—General Principles

■ When deciding a motion to disqualify an attorney, federal district courts in New York consider various sources of law, including the ABA Model Rules of Professional Conduct, the ABA Model Code of Professional Responsibility, and the New York Code of Professional Responsibility. *See Regal Marketing, Inc. v. Sonny & Son Produce Corp.*, No. 01 Civ.1911, 2002 WL 1788026, at *4 (S.D.N.Y. Aug.1, 2002) (quoting *Blue Cross and Blue Shield of New Jersey v. Philip Morris, Inc.*, 53 F.Supp.2d 338, 342 (E.D.N.Y.1999)). Those rules provide valuable guidance, although they are not binding. *See Regal*, 2002 WL 1788026 at *4; *Papyrus Tech. Corp. v. New York Stock Exch., Inc.*, 325 F.Supp.2d 270, 275–76 (S.D.N.Y.2004).

■ When a party moves for the disqualification of his adversary's attorney, "any doubt is to be resolved in favor of

disqualification." *See Hull v. Celanese Corp.*, 513 F.2d 568, 571 (2d Cir.1975); *see also Nichols v. Village Voice*, 99 Misc.2d 822, 826, 417 N.Y.S.2d 415 (N.Y.1979). In *United States v. Oberoi*, the U.S. Court of Appeals for the Second Circuit explained this cautious approach:

> The dynamics of litigation are far too subtle, the attorney's role in that process is far too critical, and the public's interest in the outcome is far too great to leave room for even the slightest doubt concerning the ethical propriety of a lawyer's representation in a given case. These considerations require application of a strict prophylactic rule to prevent any possibility, however slight, that confidential information acquired from a client during a previous relationship may subsequently be used to the client's disadvantage.

*See* 331 F.3d 44, 51 (2d Cir.2003) (citing *Emle Inds. v. Patentex, Inc.* 478 F.2d 562, 571 (2d Cir.1973)).

In *Bd. of Educ. of the City of New York v. Nyquist*, 590 F.2d 1241, 1246 (2d Cir. 1979), the Second Circuit enumerated two types of cases where disqualification is generally appropriate: this action is an example of what the Second Circuit described as the "more common[ ]" of them—"where the attorney is at least potentially in a position to use privileged information concerning the other side through prior representation, ... thus giving his present client an unfair advantage." [1] *See also Martens v. Thomann*, 273 F.3d 159, 177 n. 11 (2d Cir.2001) (citing *Nyquist*, 590 F.2d at 1246).

■ The Second Circuit has established a three part test to govern disqualification as follows:

---

1. The other type of action is "where an attorney's conflict of interests ... undermines the court's confidence in the vigor of the attorney's representation of his client." *Id.* (citations omitted). That is not at issue in this litigation.

An attorney may be disqualified from representing a client in a particular case if:

    (1) the moving party is a former client of the adverse party's counsel;

    (2) there is a substantial relationship between the subject matter of the counsel's prior representation of the moving party and the issues in the present lawsuit; and

    (3) the attorney whose disqualification is sought had access to, or was likely to have had access to, relevant privileged information in the course of his prior representation of the client.

*See Evans v. Artek,* 715 F.2d 788, 791 (2d Cir.1983).

### 1. Former Client

■ Though the first step of the Second Circuit's test in *Evans* may be read to require a formal attorney-client relationship, ample case law makes clear that an attorney nonetheless may be disqualified despite the lack of a formal attorney-client relationship; other factors may mandate denying one party her attorney of choice so as to avoid fundamental unfairness.

Such relief generally should be granted "only when a violation of the Canons of the ABA Code of Professional Responsibility poses a significant risk of trial taint." *See Glueck v. Jonathan Logan,* 653 F.2d 746, 748 (2d Cir.1981). The Second Circuit in *Glueck* went on to state that this risk exists "when an attorney ... might benefit a client in a lawsuit by using confidential information about an adverse party obtained through prior representation of that party...." *Id.; see also Bulkmatic* 2001 WL 504841, at *2 ("Such risk can arise ... 'where an attorney is at least potentially in a position to use privileged information concerning the other side through prior representation ....'") (quoting *Nyguist* 590 F.2d at 1246).

In certain circumstances, disqualification may be appropriate when an attorney gains access to the confidences even of someone who is not formally a client. One court explained that an attorney may be disqualified from representing interests adverse to a non-client "where the close and indeed symbiotic relationship between ... [the non-client] and the actual client, quite naturally encouraged confidential discussions with [the attorney] and the exchange of confidential information which the [non-client] would not otherwise have imparted." *See Flushing Nat'l Bank v. Municipal Assistance Corp. for the City of New York,* 90 Misc.2d 204, 210, 397 N.Y.S.2d 662, 667 (N.Y.1977).

Another court further emphasized that a formal attorney-client relationship may not be required in certain circumstances:

The disqualification of an attorney by reason of conflict of interest will not be denied solely because there is no actual attorney-client relationship between the parties. A "fiduciary obligation or an implied professional relation" may exist in the absence of a formal attorney-client relationship. *Westinghouse Elec. Corp. v. Kerr–McGee Corp.,* 580 F.2d 1311, 1319. It is clear that where an attorney receives confidential information from a person who, under the circumstances, has a right to believe that the attorney, as an attorney, will respect such confidences, the law will enforce the obligation of confidence irrespective of the absence of a formal attorney client relationship.

*Nichols* 99 Misc.2d at 824, 417 N.Y.S.2d 415; *see also AMBAC Indemnity Corp. v. Bankers Trust Co.,* 145 Misc.2d 52, 57, 546 N.Y.S.2d 265, 269 (N.Y.1969) (A party may be "a vicarious or *de facto* client" despite no formal attorney-client relationship and disqualification may be appropriate in such circumstances.); *Papyrus*

*Tech.*, 325 F.Supp.2d at 276–77 (For purposes of assessing a potential conflict with a former client, "a lawyer need not have an express attorney-client relationship with the former client.") (citing *Glueck,* 653 F.2d at 748–49 (2d Cir.1981)); *New York University v. Simon,* 130 Misc.2d 1019, 1022, 498 N.Y.S.2d 659, 661 (N.Y.Civ.Ct. 1985) ("[T]he dispositive factor is whether the prospective client had a reasonable expectation of confidentiality at the time the disclosure was made.").

At stake here are the intellectual property rights to *Tetris,* and plaintiffs would have much to gain from Kirby's knowledge of Soviet Elorg's confidential documents and discussions with high level Soviet Elorg employees about their respective rights. That such confidences were exchanged during the interactions between Kirby and Soviet Elorg is presumed because "[f]or the Court to probe further and sift the confidences in fact revealed would require the disclosure of the very matters intended to be protected by the rule." *See id.*

### 2. Substantial Relationship Between The Litigations

Plaintiffs also contend that no substantial relationship exists between the Tengen litigation and this action. It is clear that the issues in the two cases are not identical. The Tengen litigation focused on whether Tengen's sublicense of rights that originated from a license from Soviet Elorg for personal computers included the right to license Tetris for home video game use; the issue in this action is whether Pajitnov at some earlier date, as defendants assert, assigned certain rights to a third party that were ultimately transferred to Elorg USA.

Yet while the ultimate issues are not identical, they do bear a substantial relationship to each other. Determining substantial relationship "requires a determina-

tion with respect to whether the facts which were necessary to the first representation are necessary to the present litigation." *See Regal Marketing* 2002 WL 1788026, at *7 (citing *United States Football League v. National Football League,* 605 F.Supp. 1448, 1459 (S.D.N.Y.1985)). (A substantial relationship exists if facts pertinent to the problems for which the original legal services were sought are relevant to the subsequent litigation.).

In this action, a factual overlap appears to be both inevitable and substantial, because the ownership rights to Tetris will be traced in careful detail, just as in the Tengen litigation. Accordingly, many of the issues that will arise in this case will be essentially the same as in the earlier case, even if the ultimate issue is not identical. As such, Kirby's likely exposure to significant confidences held by Soviet Elorg would present plaintiffs with an unfair advantage over defendants here.

### 3. Access to Confidences

The third step in the *Evans* test is whether the attorney at issue had access to, or was likely to have access to, privileged information in the course of his prior representation. As described above, Kirby and his associates had access to many if not all of Soviet Elorg's documents and conducted detailed communications with Soviet Elorg's employees, the substance of which is presumed confidential. *See Papyrus,* 325 F.Supp.2d at 276–77; *Simon,* 130 Misc.2d at 1022, 498 N.Y.S.2d 659. This prong is therefore satisfied.

Accordingly, the *Evans* test has been met and Kirby *"may* be disqualified." *Evans* 715 F.2d at 791 (emphasis added). The issue then becomes whether in the exercise of discretion, *see Purgess v. Sharrock,* 33 F.3d 134, 144 (2d Cir.1994), he *should* be disqualified.

Defendants' argument turns, in part, on their position that Elorg USA is Soviet Elorg's successor. At this point in the litigation, that is not one hundred percent clear, since plaintiffs have offered apparent gaps and inconsistencies in the transfer of interests from Soviet Elorg to Elorg USA. (Sosnovsky Decl. ¶ 5–9). However, defendants have provided the more credible facts and representations that Elorg USA is the successor in interest to Soviet Elorg, at least for purposes of this motion to disqualify counsel.[2] In particular, defendants offer a sworn declaration by Belikov detailing the purported transfers of the *Tetris* rights; those transfers are consistent with defendants' proffered path of corporate metamorphosis. (Belikov Second Decl. Annexed to Defs' Reply Mem. Supp. Mot. to Disqualify). In addition, defendants point out that each link in the entire chain of ownership—along which the *Tetris* rights have purportedly passed— has enjoyed a continuity of corporate leadership which provides further corroboration that they are the successors-in-interest of Soviet Elorg. (Defs' Reply Mem. at 7–8).

## B. Imputation

■ As a consequence of an individual's disqualification, imputation may bar that attorney's law firm from serving the client. *See generally ABA Model Rules of Prof'l Conduct* R. 1.10 (2003). However, "a per se rule of disqualification based upon imputed confidences" would create " 'unnecessarily preclusive' " and " 'indiscriminate[ ]' " restraints upon an entire law firm, regardless of whether they have knowledge of a former client's confidences. *Papyrus Tech. Corp. v. New York Stock Exch., Inc.*, 325 F.Supp.2d 270, 277–78 (S.D.N.Y.2004) (quoting *Solow v. W.R. Grace & Co.*, 83 N.Y.2d 303, 610 N.Y.S.2d 128, 632 N.E.2d 437 (1994)). In this action however, imputation is appropriate: there is no evidence in the record that Kirby "perform[ed] only minimal work" for Nintendo; in any event, access to confidential information is presumed. *See id.* 325 F.Supp.2d at 276–77; *Simon*, 130 Misc.2d at 1022, 498 N.Y.S.2d 659.

Moreover, implementing a screening procedure to separate Kirby from the rest of Latham now would be bootless because Kirby has already been substantially involved in this matter. *See Cheng v. GAF Corp.*, 631 F.2d 1052, 1058 (2d Cir.1980) *vacated on other grounds and remanded*, 450 U.S. 903, 101 S.Ct. 1338, 67 L.Ed.2d 327 (1981); *see also Mitchell v. Metropolitan Life Ins. Co.*, No. 01 Civ. 2112, 2002 WL 441194, at *9 (S.D.N.Y. Mar.21, 2002) ("The Second Circuit has expressed consistent skepticism about screening as a remedy for conflicts of interest and declared that such procedures ultimately must be rejected if they are subject to doubt."). In fact, another federal district court in New York wrote that "the screening measures must have been established from the first moment the conflicted attorney transferred to the firm or, at minimum, when the firm first received actual notice of conflict." *Id.* (citing *Marshall v. State of New York Div. of State Police*, 952 F.Supp. 103,

---

2. Though "[m]otions to disqualify are generally disfavored because they are often tactically motivated, cause undue delay, add expenses, and have 'an immediate adverse effect on the client' ..., doubts should be resolved in favor of disqualification" as long as the moving party meets " 'a high standard of proof.' " *See Bulkamatic Transp. Co. v. Pappas*, No. 99 Civ. 12070, 2001 WL 504841, at *2 (S.D.N.Y.

May 11, 2001) (internal citations omitted); *see also Nyquist*, 590 F.2d at 1246 ("Disqualification has been ordered only in essentially two kinds of cases ... [b]ut in other kinds of cases, we have shown considerable reluctance to disqualify attorneys despite misgivings about the attorney's conduct.") (citations omitted).

111 (N.D.N.Y.1997)). Accordingly, this Court imputes to Latham the conflict created by Kirby's prior representation.

## IV. Conclusion

For the reasons set forth above, defendants' motion to disqualify plaintiffs' counsel is granted.