RMED INTERNATIONAL,
INC., et al., Plaintiffs,

v.

SLOAN'S SUPERMARKETS, INC., and
John A. Catsimatidis, Defendants.

No. 94 CIV.5587(PKL)(RLE).

United States District Court,
S.D. New York.

June 27, 2002.

Lehman & Gikow, P.C., New York City, David H. Gikow, Arthur R. Lehman, for Plaintiffs.

Jaffe & Asher LLP, New York City, Gregory E. Galterio, Joan M. Perryman, for Defendants.

### OPINION AND ORDER

LEISURE, District Judge.

This class action under section 10(b) of the Securities and Exchange Act of 1934, 15 U.S.C. § 78j(b), and Rule 10b–5 promulgated thereunder, arises out of the purchase of common stock of defendant Sloan's Supermarkets, Inc. ("Sloan's") by a class of investors who bought the stock at allegedly artificially inflated prices during the period of January 7, 1993 through June 2, 1994.[1] Plaintiffs rely on a "fraud on the market" theory, alleging that the company's chief executive officer, defendant John A. Catsimatidis, made materially false and misleading representations and failed to disclose certain material facts regarding a Federal Trade Commission ("FTC") antitrust investigation of Sloan's. Plaintiffs also allege that defendants' conduct constitutes fraud under state common law.

Pursuant to Rule 59(e) of the Federal Rules of Civil Procedure and Rule 6.3 of the Local Rules of the United States District Courts for the Southern and Eastern Districts of New York ("Local Rule 6.3"), defendants now move for reconsideration of the Court's February 21, 2002 Opinion and Order granting in part, and denying in part defendants' motion for summary judgment.[2] For the reasons stated below, the motion is denied.

### BACKGROUND

The factual and procedural background of this case is described in greater detail in *RMED Int'l, Inc. v. Sloan's Supermarkets, Inc.*, 185 F.Supp.2d 389, 392–97 (S.D.N.Y. 2002) (Leisure, J.), familiarity with which is assumed. For the purposes of clarity, the Court reiterates a few facts from that

---

1. RMED International, Inc., a corporation organized under the laws of Colorado, brings the instant action on behalf of all persons who purchased the common stock of defendant Sloan's between January 7, 1993 and June 2, 1994.

2. The Court granted defendants' motion for summary judgment with respect to plaintiffs' state law claim under Article 23–A of the General Business Law of New York, and for plaintiffs' claim of breach of fiduciary duty, and denied the motion with respect to plaintiffs' claim under Section 10(b) of the Securities Exchange Act, and Rule 10b–5 promulgated thereunder, as well as plaintiffs' claim of fraud under state common law. *See RMED Int'l, Inc. v. Sloan's Supermarkets, Inc.*, 185 F.Supp.2d 389, 406 (S.D.N.Y.2002) (Leisure, J.).

decision integral to consideration of the issues raised in the instant motion.

Defendant Sloan's is a publicly traded corporation that operates in the New York metropolitan area. Defendant Catsimatidis is and has been chairman of the board, chief executive officer, treasurer and 37% shareholder of Sloan's since July 28, 1988.[3] *See RMED Int'l, Inc.,* 185 F.Supp.2d at 393. In addition, at all times relevant to this action, Catsimatidis has been the sole shareholder, president, and chief executive officer of Red Apple Companies, Inc. ("Red Apple"). *See id.*

Aware of the FTC investigation of defendant Sloan's and Red Apple since its initial stages, from 1991 to 1994, defendant Catsimatidis and his attorneys engaged in discussions with the FTC concerning the possible divestiture of certain supermarkets by Sloan's and Red Apple. *See id.* at 396. In addition, from September 1993 through May 1994, Catsimatidis and Sloan's engaged in negotiations with the FTC, in which the FTC clearly stated that Sloan's was the target of its inquiry, and demanding divestiture of certain Sloan's supermarkets. *See id.*

Nevertheless, between February 28, 1993 and January 14, 1994, Sloan's communicated with shareholders and made a number of SEC filings without ever disclosing the existence of the ongoing FTC investigation, including SEC filings on February 28, 1993; April 9, 1993; August 18, 1993; October 11, 1993; and January 14, 1994. *See id.* In particular, defendant Sloan's (under its former name Designcraft), in its annual report to shareholders as of February 28, 1993, not only failed to disclose the investigation, but affirmatively stated that Sloan's would "continue to actively seek additional businesses, preferably within the food industry." *Id.*

On February 21, 2002, this Court granted defendants' motion for summary judgment with respect to plaintiffs' state law claim under Article 23–A of the General Business Law of New York, and for plaintiffs' claim of breach of fiduciary duty, but denied the motion with respect to the plaintiffs' claim under Section 10(b) of Securities Exchange Act, and Rule 10b–5 promulgated thereunder, as well as plaintiffs' claim of fraud under state common law. *See RMED Int'l, Inc.,* 185 F.Supp.2d at 406. Defendants now seek reconsideration of this decision, asserting that their motion for summary judgment should have been granted in its entirety.

## DISCUSSION

Defendants make two arguments in support of their motion for reconsideration: (1) defendant Sloan's did not materially misrepresent the FTC inquiry of Sloan's because the FTC investigation was disclosed in two publicly available Sloan's filings; and (2) defendants did not have the requisite scienter to violate Rule 10b–5.[4]

---

**3.** Until late March 1993, Sloan's was known as Designcraft Industries, Inc. ("Designcraft"). *See RMED Int'l, Inc.,* 185 F.Supp.2d at 393.

**4.** Defendants add a third argument in their reply papers in the instant motion, asserting that even if the FTC investigation of Sloan's constituted material information, defendants had no duty to disclose this information. *See* Defendants' Reply Memorandum of Law in Further Support of Motion for Reargument and Reconsideration ("Defs' Reply") at 6. The

Court rejects this argument both because defendants failed to raise it in their initial papers seeking reconsideration, and because it lacks merit. *See generally, Tetra Techs., Inc. v. Harter,* 823 F.Supp. 1116, 1120 (S.D.N.Y. 1993) ("Nor may entirely new but foreseeable points relevant to a motion be presented in a reply affidavit .... Such a procedure is foreign to the spirit and objectives of the Federal Rules of Civil Procedure. Were tactics of this type permitted, a sur-reply affidavit would be necessary from the adversary, followed by a

*See* Defendants' Memorandum of Law in Support of Motion for Summary Judgment ("Defs' Mot."), at 2–4. The Court will address the standard for a motion for reconsideration, and then turn to each of defendants' arguments.

## I. *The Motion for Reconsideration Standard*

The standard for granting a motion for reconsideration is "strict," and such a motion will generally will be denied "unless the moving party can point to controlling decisions or data that the court overlooked—matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir.1995). Indeed, the decision to grant or deny a motion for reconsideration or reargument is in the " 'sound discretion of a district court judge and will not be overturned on appeal absent an abuse of discretion.' " *Davidson v. Scully*, 172 F.Supp.2d 458, 462 (S.D.N.Y.2001) (Leisure, J.) (quoting *McCarthy v. Manson*, 714 F.2d 234, 237 (2d Cir.1983)). Local Civil Rule 6.3 "precludes a party from advancing new facts, issues or arguments not previously presented to the court." *Bank Leumi Trust Co. of N.Y. v. Istim, Inc.*, 902 F.Supp. 46, 48 (S.D.N.Y.1995). Moreover, a motion for reconsideration "will generally be denied unless the moving party can point to controlling decisions or data that the court over-looked matters, in other words, that might reasonably be expected to alter the conclusion reached by

further supplemental response by the moving party, and so on *ad infinitum*.") (citations omitted). Such sandbagging is particularly egregious on a motion for reconsideration, which requires that the moving party seek reconsideration within 10 days after entry of judgment. *See* Fed. Civ. P. 59(e); *see also* Local Rule 6.3 (mandating that a party seeking reconsideration file a notice of motion and a supporting memorandum of law within 10 days "after the docketing of the court's determination of the original motion."). Defendants raised this argument for the first time in their reply papers, more than 10 days after the Court's February 21, 2002 summary judgment decision, and permitting defendants to raise a new ground for reconsideration in a reply memorandum would allow defendants to violate the intent of Rule 59(e). *See* Defs' Reply at 13 (dated March 18, 2002).

Moreover, this argument is meritless, and threatens to turn Rule 10b–5 on its head. As this Court ruled on defendants' motion for summary judgment, plaintiffs have presented sufficient evidence for a reasonable jury to conclude that defendants' failure to disclose the FTC investigation of Sloan's in several public filings constituted repeated misstatements, or omissions, of a material fact. *See RMED Int'l, Inc.*, 185 F.Supp.2d at 401. Also, a jury could reasonably find that Sloan's February 23, 1993 Annual Report, which stated that Sloan's would "actively seek additional businesses, preferably within the food industry," constituted a misstatement of a material fact. *Id.* Regardless of whether defendants' had a duty to disclose the FTC investigation of Sloan's, under Section 10(b) of the Securities Exchange Act of 1934 and Rule 10b–5 promulgated thereunder, defendants certainly had a duty not to misstate a material fact, i.e., the FTC investigation of Sloan's. *See* 15 U.S.C. § 78j(b); 17 C.F.R. § 240.10b–5 (prohibiting making "any untrue statement of a material fact.").

Further, as the very cases that defendants cite in their reply papers raising the instant argument hold, a duty to disclose material information arises, *inter alia*, when a party makes "an inaccurate, incomplete or misleading prior disclosure." *In re Canandaigua Secs. Litig.*, 944 F.Supp. 1202, 1208 (S.D.N.Y. 1996) (citing *Glazer v. Formica Corp.*, 964 F.2d 149, 157 (2d Cir.1992)); *see* Defs' Reply at 6–7. The Court previously found that a jury could conclude that defendants made several filings that misleadingly failed to disclose the investigation; thus, it follows that defendants would then have a duty to disclose the FTC investigation of Sloan's in order to correct these misleading prior disclosures. *See RMED Int'l, Inc.*, 185 F.Supp.2d at 401; *see also infra* Section II (detailing two misleading filings made by Sloan's that defendants claim disclose the FTC investigation of Sloan's).

the court." *Davidson,* 172 .F.Supp.2d at 461.

A motion for reconsideration "is not a substitute for appeal and may be granted only where the Court has overlooked matters or controlling decisions which might have materially influenced the earlier decision." *Morales v. Quintiles Transnat'l Corp.,* 25 F.Supp.2d 369, 372 (S.D.N.Y. 1998) (internal quotations omitted). In determining whether a motion for reconsideration should be granted, Local Civil Rule 6.3 "should be narrowly construed and strictly applied so as to avoid repetitive arguments on issues that have been considered fully by the Court." *Dellefave v. Access Temps., Inc.,* No. 99 Civ. 6098, 2001 WL 286771, at *1 (S.D.N.Y. Mar.22, 2001).

## II. *Disclosure*

 Defendants argue in the instant action that defendant Sloan's did not materially misrepresent the FTC inquiry of Sloan's because the FTC investigation was disclosed in two publicly available Sloan's filings.[5] *See* Defs' Mot. at 1–2, 4–6. The first public filing that defendants claim disclosed the FTC investigation is Exhibit 2 to Sloan's March 1993 Form 8–K, the Loan and Security Agreement among Sloan's, Namdor and the Bank of Tokyo Trust Company ("Loan and Security

Agreement") dated March 19, 1993. *See id.* In Section 3.07 of the Loan and Security Agreement, titled "Litigation," Sloan's states:

> There are no actions, suits or proceedings at law or in equity or by or before any governmental instrumentality or other agency now pending or, to the knowledge of the Company, threatened, against or affecting the Company or any property or rights of the Company which could materially adversely affect the financial condition of the ·Company, or, to the Company's actual knowledge, the Seller, which could materially adversely affect the operation of a Supermarket. The Company has delivered to the Bank true, correct and complete copies of all correspondence, information and other communications relating to certain issues with respect to compliance by certain entities controlled by John Catsimatidis with the Hart–Scott Rodino Act and possible violations of the Clayton Act and the Federal Trade Commission Act. The Company represents that it is not required to comply with the Hart–Scott Rodino Act and that, to its best knowledge, the consummation of the Supermarkets Acquisition will not violate either the Clayton Act or the Federal Trade Commission Act and that

---

**5.** The Court's decision on summary judgment implicitly rejected the two alleged disclosures raised in the instant motion. *See RMED Int'l, Inc.,* 185 F.Supp.2d at 401 ("[P]laintiffs have put forth sufficient evidence for a reasonable jury to conclude that the defendants' non-disclosure of the FTC investigation, *in a number of public filings,* constituted repeated misstatements, or omissions, of a material fact.") (emphasis added). Thus, although defendants made this same argument on summary judgment and it was rejected, the Court writes now to dispel any ambiguity regarding the merit of this argument. *See DiLaura v. Power Auth. of State of New York,* 982 F.2d 73, 76 (2d Cir.1992) (McLaughlin, J.) (holding that the law of the case doctrine posits that when

a court decides upon a rule of law, that decision continues to govern the same issues in subsequent stages of the case); *see also Sequa Corp. v. GBJ Corp.,* 156 F.3d 136, 144 (2d Cir.1998) (noting that a motion for reconsideration is not a vehicle for taking a second bite at the apple); *Morales,* 25 F.Supp.2d at 372 (noting that a motion for reconsideration is not a substitute for an appeal); *Aquilio v. Police ·Benevolent Ass'n of New York State Troopers, Inc.,* No. 91 Civ. 325, 1994 WL 494639, at *4 (N.D.N.Y. Aug.15, 1994) (rejecting arguments on reconsideration that amount to nothing more than a "disagreement between an· understandably disappointed litigant and the Court").

even if a violation is established, such violation would not have a material adverse affect on the financial condition of the Company or on its properties or assets.

Loan and Security Agreement at § 3.07.

Defendants point specifically to the language in the second half of Section 3.07 indicating that Sloan's had delivered copies of correspondence to the Bank of Tokyo Trust Company relating to compliance with the Hart–Scott Rodino Act, and "possible violations of the Clayton Act and the Federal Trade Commission Act." *See* Defs' Mot. at 3. Defendants believe that this constitutes disclosure of the FTC agreement. The Court disagrees. This language, even taken alone, does not sound like an announcement of an FTC investigation, but rather like the prophylactic language of a careful transactional attorney. Moreover, when the language is read in context, defendants' argument loses all force. Section 3.07 begins, "There are *no actions, suits or proceedings* at law or in equity or by or *before any governmental instrumentality or other agency now pending or,* to the knowledge of the Company, *threatened,* against ... the Company." Loan and Security Agreement at § 3.07 (emphasis added). Thus, rather than disclosing the FTC investigation, Section 3.07 misleadingly indicates that Sloan's was not being investigated by the FTC, and that Sloan's does not know of any potential investigation by the FTC. Therefore, the Court rejects defendants' motion for reconsideration on this basis.

■ The defendants' argument that the second public filing discloses the FTC investigation of Sloan's is equally unavailing. Defendants point to Note 4 to the Financial Statements of the eleven stores purchased by Sloan's in a deal consummated in late 1992 and early 1993, filed as part of Sloan's June 14, 1993 8–KA ("Sloan's 8–

KA"). *See* Defs' Mot. at 1–2, 4. That document states:

During September 1991 the Attorney General's Office of the State of New York Antitrust Bureau and the Federal Trade Commission of the United States began investigations into whether the Company committed violations of the antitrust laws based upon the sale by the Company of certain of the stores to one buyer. There have been no further requests of the Company for information.

Sloan's 8–KA at Note 4.

Defendants admit, however, that the reference to "Company" in this statement refers to CKMR, the company that sold eleven supermarkets to defendant Sloan's. *See* Defs' Reply at 5–6. Thus, Note 4 to Sloan's 8–KA discloses that CKMR was the subject of an investigation, but it does not disclose that defendant Sloan's was the subject of any investigation. Further, as plaintiffs correctly argue, this alleged disclosure, which appeared in a footnote to a financial statement prepared by CKMR, was itself misleading, because "CKMR was the subject of an FTC investigation relating to 1991 events having nothing to do with defendant Sloan's," and because defendants failed to reveal that they too were the subject of an FTC investigation. Plaintiffs' Memorandum of Law in Opposition to Defendants' Motion for Reargument ("Pls' Opp.") at 4. Thus, by revealing an unrelated FTC investigation of CKMR and not revealing the FTC investigation of Sloan's, defendants increased the likelihood that investors would conclude that defendants were not the subject of any investigation. *See id.* Therefore, the Court denies defendants' motion for reconsideration on the basis of these alleged disclosures.

### III. *Scienter*

■ Defendants contend that this Court, in finding a triable issue of fact with

respect to scienter, misapplied the controlling Second Circuit authority. *See* Defs' Mot. at 6. This argument is also without merit.

In a Rule 10b–5 action, the requisite state of mind, or scienter, is "an intent to deceive, manipulate or defraud." *Kalnit v. Eichler*, 264 F.3d .131, 138 (2d Cir.2001). To plead scienter, plaintiffs are required to "state with particularity facts giving rise to a strong inference that the defendant acted with the requisite state of mind." *Press v. Chemical Inv. Servs. Corp.*, 166 F.3d 529, 538 (2d Cir.1999). A plaintiff may prove scienter by showing (1) that the defendants had both the motive and opportunity to commit fraud, or (2) by alleging facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness. *See Kalnit*, 264 F.3d at 138–39; *Press*, 166 F.3d at 538. The Second Circuit has been lenient in allowing scienter issues to withstand summary judgment, even when the inferences are fairly tenuous. *See Press*, 166 F.3d at 538 (citing *In re Time Warner Secs. Litig.*, 9 F.3d 259, 270–71 (2d Cir.1993)). Moreover, scienter is a question of fact, and therefore "appropriate for resolution by the trier of fact." *Press*, 166 F.3d at 538; *see Wechsler v. Steinberg*, 733 F.2d 1054, 1058–59 (2d Cir. 1984) ("Issues of motive and intent are usually inappropriate for disposition on summary judgment."); *In re Kidder Peabody Secs. Litig.*, 10 F.Supp.2d 398, 415 (S.D.N.Y.1998) ("Whether a plaintiff can establish scienter usually cannot be decided on summary judgment."); *In re Columbia Secs. Litig.*, 155 F.R.D. 466, 479 (S.D.N.Y.1998) ("Resolution of the question of scienter, as with any issue of motive or intent, generally requires examination of a witness's demeanor and credibility and is thus inappropriate for disposition on summary judgment.").

### A. Motive and Opportunity

In *Press*, the Second Circuit held in the context of a motion to dismiss that the plaintiff had "barely alleged motive and opportunity, but he nonetheless satisfied the pleading standards," reasoning that "[w]hile this is the barest of all pleadings that would be acceptable, we cannot take this issue of fact from the finder of fact." 166 F.3d at 538. The Court held that requiring more in a pleading of motive "would make virtually impossible a plaintiff's ability to plead scienter in a financial transaction involving a corporation, institution, bank or the like that did not involve specifically greedy comments from an authorized corporate individual." *Id.*

However, "[m]otives that are generally possessed by most corporate directors and officers do not suffice; instead, plaintiffs must assert a concrete and personal benefit to the individual defendants resulting from the fraud." *Kalnit*, 264 F.3d at 139. Examples of insufficient motives include the desire for a corporation to maintain the appearance of profitability or of the success of an investment, or the desire to keep stock prices high to increase officer compensation. *See id.* Furthermore, the "plaintiff must do more than merely charge that executives aim to prolong the benefits of the positions they hold." *Shields v. Citytrust Bancorp., Inc.*, 25 F.3d 1124, 1130 (2d Cir.1994).

Therefore, in the instant action, the motive to keep stock prices high in order to increase defendant Catsimatidis's compensation as an officer of Sloan's would not be enough to uphold a finding of scienter. However, as plaintiffs argue, because defendants contend Sloan's intended to pursue acquisitions of other companies, defendants had a motive to inflate artificially the value of Sloan's stock in order to use the stock to acquire other companies. *See* Pls' Opp. at 7–8; *Rothman v. Gregor*, 220 F.3d

81, 93–94 (2d Cir.2000) ("[I]n some circumstances, the artificial inflation of stock price in the acquisition context may be sufficient for securities fraud scienter."); *In re Complete Mgmt. Inc. Secs. Litig.,* 153 F.Supp.2d 314, 328 (S.D.N.Y.2001); *see also In re Time Warner Inc. Secs. Litig.,* 9 F.3d 259, 270 (2d Cir.1993) (finding scienter where the plaintiffs alleged that the defendants had the motive not to disclose certain damaging information in order to maintain an inflated stock price for an upcoming offering). Indeed, as plaintiffs note, Sloan's announced in an October 1, 1997 proxy statement that in the 19 month period after its 11 store acquisition in 1993, Sloan's did not pursue an "aggressive growth strategy" because of Sloan's "size, the *market price of its Common Stock* and lack of capital." Sloan's Supermarkets, Inc. Proxy Statement, October 1, 1997, at 5 (emphasis added), attached as Ex. C to the Affidavit of Jonathan Honig, Esq., sworn to on June 16, 2000; *see* Pls' Opp. at 7. Therefore, the Court denies defendants' motion for reconsideration on this basis.

**B. Circumstantial Evidence of Conscious Misbehavior or Recklessness**

Further, even if plaintiffs have not shown that defendants had the motive and opportunity to commit fraud, scienter may also be pled "by alleging facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness." *Chill v. General Electric Co.,* 101 F.3d 263, 268 (2d Cir.1996). To satisfy the standard of recklessness "[i]t is sufficient for appellants to allege 'defendants' knowledge of facts or access to information contradicting their public statements.'" *Honeyman v. Hoyt (In Re Carter–Wallace, Inc. Secs. Litig.),* 220 F.3d 36, 40 (2d Cir.2000) (quoting *Novak v. Kasaks,* 216 F.3d 300, 308 (2d Cir.2000)). To support recklessness, the facts alleged must be "strong circumstantial evidence" of recklessness and must be such that it gives rise to a "strong inference of fraudulent intent." *Acito v. IMC-ERA Group, Inc.,* 47 F.3d 47, 52 (2d Cir. 1995); *see Shields,* 25 F.3d at 1128. In the instant action, as the Court articulated in its summary judgment decision, plaintiffs have offered evidence that defendants knew of the FTC investigation of defendant Sloan's, and that defendants repeatedly misrepresented and omitted this information in SEC filings. *See supra* Background; *supra* Section II; *RMED Int'l, Inc.,* 185 F.Supp.2d at 399–404.

Furthermore, in its annual report to shareholders as of February 28, 1993, defendant Sloan's not only failed to disclose the investigation, but stated that Sloan's would "continue to actively seek additional businesses, preferably within the food industry," when in fact Catsimatidis and his attorneys engaged in discussions with the FTC from 1991 to 1994 concerning the possible divestiture of certain Sloan's supermarkets by defendant Sloan's and Red Apple. *See supra* Background; Section II. These misleading statements provide strong circumstantial evidence of recklessness. *See Kalnit,* 264 F.3d at 138–39; *see also Winkler v. NRD Mining Ltd.,* No. 82 Civ. 3318, 1988 WL 16176, at *1 (E.D.N.Y. Feb.22, 1988) (holding that allegations that a press release and annual report issued by defendants were false and misleading constituted sufficient evidence of scienter to overcome a motion for summary judgment).

Defendants assert that there can be no finding of scienter under a conscious misbehavior or recklessness theory, because defendants allegedly disclosed the FTC investigation of Sloan's in the SEC filings made in March and June of 1993 and discussed extensively in Section II of this Opinion and Order. *See* Pls' Mot. at 1–3,

8–10. As the Court detailed in Section II, these filings not only failed to disclose the FTC investigation of Sloan's, but a reasonable jury could find them to be materially misleading, and thus the Court rejects this argument. *See supra* Section II.

Defendants further argue that the decision in *Honeyman v. Hoyt* demonstrates that plaintiffs have not shown scienter under a conscious misbehavior or recklessness theory. 220 F.3d at 40; *see* Defs' Mot. at 9. This argument is unpersuasive. In *Honeyman*, the Second Circuit held that a drug manufacturer did not demonstrate scienter where the manufacturer of the drug did not disclose information about the drug that the Court found was not materially misleading. 220 F.3d at 40–41. In the instant action, unlike *Honeyman*, this Court has already found that a reasonable jury could conclude that defendants consciously disseminated materially misleading information. *See supra* Section II; *RMED Int'l, Inc.*, 185 F.Supp.2d at 402–03. This issue has been decided as a matter of law, and therefore it is the law of the case. *See Doctor's Assocs., Inc. v. Distajo*, 107 F.3d 126, 131 (2d Cir.1997) ("The doctrine of law of the case instructs that 'if a court decides a rule of law, that decision should continue to govern in subsequent stages of the same case.'") (quoting *Sagendorf–Teal v. County of Rensselaer*, 100 F.3d 270, 277 (2d Cir.1996)). Thus, in accord with *Honeyman*, this Court found scienter present in the instant action precisely because a jury could reasonably find that plaintiffs consciously disseminated materially misleading information. 220 F.3d at 40–41; *see RMED Int'l, Inc.*, 185 F.Supp.2d at 399–404.

Finally, as previously discussed, scienter is a question of fact, and is therefore appropriate for resolution by the trier of fact. *Press*, 166 F.3d at 538. Therefore, the Court denies defendants' motion for reconsideration on the basis of lack of scienter.

### CONCLUSION

For the reasons set forth above, defendants' motion for reconsideration is HEREBY DENIED.

**SO ORDERED.**