HUMAN ELECTRONICS, INC., Plaintiff,

v.

EMERSON RADIO CORP., et al., Defendants.

No. 5:03–CV–1318.

United States District Court, N.D. New York.

Sept. 23, 2004.

Order Denying Reconsideration Oct. 28, 2004.

Wall, Marjama Law Firm, Michael D. Pinnisi, Sr., Esq., Indranil Mukerji, Esq., Robert Emmet Purcell, Esq., of Counsel, Syracuse, NY, Attorneys for Plaintiff.

Bond, Schoeneck Law Firm, David L. Nocilly, Esq., George R. McGuire, Esq., of Counsel, Syracuse, NY, Attorneys for defendants Target Corp., RadioShack Corp., International, Electronics, Inc., and Best Buy Co., Inc.

Manatt, Phelps & Phillips LLP, Robert Becker, Esq., of Counsel, Palo Alto, CA, Attorneys for defendants Emerson, Radio Corp., Team Products International, Inc., Allstar Marketing Group, and Media Syndication Global, Inc.

Ward, Norris, Heller & Reidy, Thomas E. Reidy, Esq., of Counsel, Rochester, NY, Local Counsel for defendants Emerson Radio Corp., Team Products International, Inc., Allstar Marketing, Group, and Media Syndication Global, Inc.

### ORDER

DIBIANCO, United States Magistrate Judge.

Presently before the court is plaintiff's motion to disqualify the Bond, Schoeneck & King (BSK) Law firm from representing any of the defendants[1] in this action. (Dkt. No. 52). The defendants have responded in opposition to plaintiff's motion, and plaintiff has filed a reply. (Dkt.Nos.56, 57). I heard oral argument on the motion to disqualify on September 2, 2004. At my request, plaintiff's counsel submitted some additional documents for my *in camera* review. Plaintiff and defendants have submitted further letters in support of their respective positions.[2]

### DISCUSSION

#### 1. *Background*

This patent action involves a device that is used to detect in-coming telephone calls when an individual is using a dial-up connection to the internet. Plaintiff is suing eight defendants, four defendants who re-

---

1. Bond currently represents four defendants: Target Corp.; RadioShack Corp.; International Electronics, Inc.; and Best Buy, Co., Inc., which refer to themselves as the "Catch–a–Call" defendants.

2. Defendants have submitted a letter dated September 7, 2004, and plaintiff has submitted a letter dated September 8, 2004. Although in their September 7, 2004 letter defendants requested additional in person argument, I find that further argument on this issue is not necessary.

fer to themselves as the Catch–a–Call defendants, are represented by BSK, and the other four defendants are represented by the Ward, Norris, Heller, and Reidy Law Firm. This action was filed on October 30, 2003, and BSK filed its notice of appearance for the Catch–a–Call defendants on June 24, 2004. (Dkt. No. 35). The Catch–a–Call defendants were originally represented by other counsel.

Plaintiff is represented by the Wall, Marjama & Bilinski Law Firm (WMB). As a basis for its motion to disqualify, plaintiff argues that a former member of WMB and a former associate of WMB left WMB on April 30, 2004 and joined BSK on May 1, 2004. WMB claims that the departure was without prior notice to WMB, and that the two attorneys, Daniel Malley, Esq. and William Greener, Esq., took sixteen compact discs containing confidential WMB documents and information. These discs were uploaded onto BSK computers. Plaintiff also argues that Mr. Malley was a partner at WMB and as such, was privy to at least one partner meeting where the possibility of representing plaintiff on a contingency fee basis was thoroughly discussed. Plaintiff argues that this meeting would have revealed important substantive information about this case, specifically, and important financial information that could also have an impact upon WMB's ability to prosecute the case on plaintiff's behalf. Plaintiff also points out that WMB *only had four partners* at the time, making information about clients even more accessible to each partner.

WMB argues that not only should the individual attorneys be disqualified from representing any defendants, but the disqualification should be imputed to BSK. BSK opposes disqualification, arguing that

even if Attorneys Malley and Greener would be disqualified from representing any defendants in this action, the disqualification should not extend to BSK because BSK has erected a "screen" that will effectively shield BSK from obtaining any improper information about HEI.

## 2. *Disqualification*

■ Disqualification motions that are based upon an attorney's prior representation of a now-adverse client are committed to the discretion of the district court. *Papyrus Technology Corp. v. New York Stock Exchange, Inc.*, 325 F.Supp.2d 270, 276 (S.D.N.Y.2004)[3] (citing *Cheng v. GAF Corp.*, 631 F.2d 1052, 1055 (2d Cir.1980)). These motions, however, are viewed with disfavor in the Second Circuit. *Id.* (citing *Evans v. Artek Sys. Corp.*, 715 F.2d 788, 791–92 (2d Cir.1983)). The focus of these motions must be "on preserving the integrity of the trial process" and not on monitoring the ethics of the legal community. *Id.* at 276 (citing *Armstrong v. McAlpin*, 625 F.2d 433, 444 (2d Cir.1980), *vacated on other grounds and remanded*, 449 U.S. 1106, 101 S.Ct. 911, 66 L.Ed.2d 835 (1981); *United States Football League v. Nat'l Football League*, 605 F.Supp. 1448, 1463 n. 31 (S.D.N.Y.1985)). A high standard of proof is required for disqualification. *Id.* at 276 (citing *inter alia Evans*, 715 F.2d at 791).

■ In order to conduct the disqualification analysis, courts have looked to the American Bar Association's Code of Professional Responsibility that has been adopted by New York State's Disciplinary Rules. *Id.* at 276 n. 7. Although these disciplinary rules are not binding on the federal courts because they are intended

**3.** Although LEXIS/NEXIS has provided an F.Supp.2d citation for the first page of this case, the individual page numbers to F.Supp.2d have not been listed. Thus, the court will provide the LEXIS citation to the individual pages.

for use in disciplinary proceedings, the court looks to them for guidance. *Id.* at 276. In order to assure adherence to these principles, an ***attorney*** may be disqualified from representing a client if

> (1) the moving party is a former client of the adverse party's counsel; (2) there is a substantial relationship between the subject matter of the counsel's prior representation of the moving party and the issues in the present lawsuit; and (3) the attorney whose disqualification is sought had access to, or is likely to have had access to, relevant privileged information in the course of his prior representation of the client.

*Marshall v. New York Division of State Police,* 952 F.Supp. 103, 107 (N.D.N.Y.1997)(quoting *Evans,* 715 F.2d at 791 (citations omitted)). Disciplinary Rule 5–108(A) provides that

> a lawyer who has represented a client in a matter shall not without the consent of the former client after full disclosure: (1) thereafter represent another person in the same or substantially related matter in which the person's interests are materially adverse to the interests of the former client ... [or] (2) [u]se any confidences or secrets of the former client except as permitted by DR 4–101(c) or when the confidence or secret has become generally known.

The court would point out that for purposes of "representation" under DR 5–108(A), an attorney need not have an ***express*** attorney-client relationship with the former client, instead, the appropriate inquiry is whether the lawyer has obtained or had access to secrets or confidences of the former client. *Papyrus,* 325 F.Supp.2d at 277. Additionally, there is an ***irrebuttable*** presumption that an attorney who has represented a client will have obtained secrets and confidences of that client. *Id.* at 277. The court is not re-

quired to determine whether the attorney actually received any confidential information, the important factor is whether the attorney had "access" to the information. *Id.*

■ If the attorney himself or herself is disqualified, then the court turns to what is generally the key issue in the case: whether the attorney's disqualification is imputed to counsel's new firm. Under DR 5–105(D), if attorneys are associated in a law firm, none of them shall knowingly accept, or continue employment when any one of them would be prohibited in doing so under DR 5–108. This imputation of disqualification is based on the presumption that if confidences or secrets were disclosed to one member of a firm, each individual attorney in the firm has or may have become privy to those confidences. *Papyrus,* 325 F.Supp.2d at 277. This presumption, however, ***may be rebutted.*** *Id.* (citing *United States Football League,* 605 F.Supp. at 1461 n. 28).

Courts have recognized that under appropriate circumstances, a "screen" may be established within a firm to rebut the presumption of shared confidences. *Id.* (citing *inter alia Lambert v. Chase Manhattan Bank, N.A.,* Nos. 93 Civ. 1317, 5298, 6876, 8270, 1996 WL 66130, 1996 U.S. Dist. LEXIS 13114 (S.D.N.Y. Feb. 15, 1996); *In re Del–Val Fin. Corp. Sec. Litig.,* 158 F.R.D. 270 (S.D.N.Y.1994)). It has also been recognized that a "per se" rule of disqualification based on imputed knowledge would be "unnecessarily preclusive." *Id.* at 278 (citing *Solow v. W.R. Grace & Co.,* 83 N.Y.2d 303, 610 N.Y.S.2d 128, 632 N.E.2d 437, 440 (1994)). An important consideration in the imputation analysis is the significance of the disqualified attorney's involvement in, and his or her knowledge of the former client's confidences and secrets. *Id.* at 278 (citations omitted).

The court must examine the degree to which the tainted attorney represented the former client. *Id.* If the tainted attorney's involvement was peripheral, the nature of the work performed on the case was such that the attorney was not a "strategy-maker", or a long period of time has past since the prior representation, the firm may rebut the presumption of shared confidences. *Id.* at 278–279.

■ Additionally, the firm seeking to avoid disqualification by erecting a screen bears the burden of showing that the screen will be effective. *Renz v. Beeman,* 1989 WL 16062, *7–8, 1989 U.S. Dist. LEXIS 1784, *22–23 (N.D.N.Y. Feb. 21, 1989)(S.J.McAvoy). However, while screening devices may in some circumstances be used to prevent the dissemination of confidences and secrets from a prior representation, they may not be used where the court cannot determine that the screens will effectively prevent disclosure. *Marshall,* 952 F.Supp. at 111. Therefore, even if screening measures are taken, if there is still an appearance of impropriety, the court should disqualify the individual attorney and the firm. *See Cheng,* 631 F.2d at 1058–59.

Cases in which a screen has been rejected as a method for preventing disclosure include instances in which the law firm was small, and there remained doubts that even the most stringent screening methods would be effective. *See Young v. Central Square Sch. Dist.,* 213 F.Supp.2d 202, 216 (N.D.N.Y.2002); *Baird v. Hilton Hotel Corp.,* 771 F.Supp. 24, 27 (E.D.N.Y.1991)(disqualifying a nine attorney law firm). The timing of the screen may also be an issue. The law firm must establish the screen either from the first moment the conflicted attorney transfers to the firm or when the firm first receives **actual notice of the conflict.** *See Papyrus,* 325 F.Supp.2d at 281 (screen effective when established immediately after firm found out that attorney may have received confidences); *Cummin v. Cummin,* 264 A.D.2d 637, 639, 695 N.Y.S.2d 346, 347 (1st Dep't 1999).

## 3. Application of the Standards to this Case

■ Plaintiff argues that as a partner in WMB, Malley had access to confidential information regarding clients of the firm, including HEI. Plaintiff has submitted e-mails that were distributed to the partners in the firm, outlining the proposal from one of the partners to take the HEI case on a contingency fee basis. The information that was distributed to the partners, including Malley, consisted of a factual summary of the case, and some litigation strategy in relation to whether WMB could or should support the expenses of the litigation pending the resolution of the action. The information also included documents that were sent to the client, outlining the contingency agreement. It is clear that Malley was on the distribution list for the e-mail, and it also appears that he was sent a hard copy of the information because he **failed to respond** to the e-mail as it was originally sent. Thus, Malley could have seen the information twice. There is no other evidence that Malley knew anything more about the HEI case. Malley states in his affidavit that he was *not* involved in the initial patent application for this device, is *not* a litigator, and did **not do any work** on the HEI case. Malley Aff. ¶¶ 5, 11.

However, as plaintiff's counsel points out, although HEI may not have been Malley's "client", HEI was certainly a client of the firm of which Malley was a partner, and Malley did have "access" to confidential information as a partner in the firm. The case involving the former client is the same case that is at issue here, thus,

the "substantial relationship" test is met. Finally, regarding the attorney's access to confidential information, it is true that plaintiff does not have to show that the attorney actually received the information, only that he or she was "likely" to have had *access* to the information. *Arifi v. de Transp. du Cocher, Inc.,* 290 F.Supp.2d 344, 350 (E.D.N.Y.2003)(citing *Gov't of India v. Cook Indust., Inc.,* 569 F.2d 737, 740 (2d Cir.1978)).

Attorney Malley has stated that he recalls a conference at which a contingency fee agreement was discussed, but does not remember the specifics of the meeting, and has stated that he did not even remember the name of the client involved. Malley Aff. ¶ 6. Attorney Malley also stated that he did not discuss HEI with any of the WMB attorneys and never saw any of the documents thereafter related to the litigation. *Id.* Although the court has no reason to doubt Malley's statements, it has been held that the third prong of the disqualification test is met if the attorney had likely "access" to the information, regardless of whether he recalled any discussion of the case. *Arifi,* 290 F.Supp.2d at 350 (citing *Schwed v. General Electric,* 990 F.Supp. 113, 117 n. 2 (N.D.N.Y.1998)).

Thus, the court finds that Attorney Malley would be disqualified from representing defendants in this case. The parties do not seriously dispute the first portion of this analysis, and Attorney Malley never was or wished to be involved in this action on behalf of BSK. The real question, and the *more difficult* issue in this case, is whether Malley's disqualification would be imputed to BSK so that the firm and any of the attorneys in the firm would be disqualified from representing the Catch–a–Call defendants.

▮ BSK argues that regardless of Attorney Malley's status as a former partner of WMB, the disqualification should not be imputed to BSK because the firm erected a "screen" to prevent any confidential information of WMB clients to be divulged to members of BSK. BSK claims that the screen was erected prior to Attorneys Malley and Greener arriving at the firm, and that no breaches of the screen have been reported since the arrival of the two ex-WMB attorneys. BSK also argues that District Judge Sharpe has already assessed the efficacy of the BSK screen in another action and has found that the screen was sufficient to avoid disqualification of the firm even when the attorney involved had actually done some work on the case in question.

Plaintiff argues that notwithstanding the efficacy of BSK's screen in general, the screen in *this case* did not prevent confidential information from being distributed to BSK attorneys. The burden is on the firm seeking to show the effectiveness of the screen, and any doubts are to be resolved in favor of disqualification. *See United States Football League,* 605 F.Supp. at 1467 n. 37 (citing *Schiessle v. Stephens,* 717 F.2d 417, 421 (7th Cir.1983)) (burden on party supporting screen); *Wieme v. Eastman Kodak Co.,* 02–CV–6021, 2003 WL 23163157, *5, 2003 U.S. Dist. LEXIS 23781, *16–17 (W.D.N.Y. Sept. 22, 2003)(citing *Hull v. Celanese Corp.,* 513 F.2d 568, 571 (2d Cir. 1975))(doubts resolved in favor of disqualification).

Plaintiff argues that during the employment negotiations between Malley, Greener, and BSK attorneys, Malley and Greener disclosed important confidential information regarding WMB's finances, and upon Malley and Greener's departure from WMB, they took sixteen computer disks of information that was ultimately uploaded onto a BSK computer. Defendants point out that the "screen" is generally erected to prevent information be-

ing shared when BSK represents a client adverse to WMB, making sure that any confidential information that is known to Malley or Greener is not used to their former client's detriment. BSK did not represent defendants at the time that Malley and Greener moved to BSK, thus, assuming that any information regarding HEI was on the sixteen discs, it would not have been subject to the screen.

Plaintiff argues that this fact further supports disqualification because it shows that confidential information that could be used against their client could have been divulged to BSK and would not have been subject to the screen until BSK agreed to represent defendants. Thus, the damage done by the disclosure of the confidential information would already have been done, and no screen would have prevented the disclosure. Plaintiff argues that since the burden is on BSK, the firm has not shown that the screen prevented any information from being disclosed and, thus, even if the screen would generally have been effective, it was not effective in this case.

The court would point out that in *Papyrus,* the disqualified attorney (Van Buskirk) went to his new law firm (Frommer, Lawrence & Haug–Frommer) before the firm agreed to represent a client adverse to the disqualified attorney's former client (New York Stock Exchange, Inc.–NYSE). In fact, when Papyrus approached Frommer to represent it in a case against NYSE, Frommer conducted an intra-firm conflicts check and determined that Van Buskirk worked for the firm representing NYSE (Milbank, Tweed–Milbank), but did no work on the NYSE matter and could not recall obtaining any confidential information, although he did remember that Milbank represented NYSE. 325 F.Supp.2d at 280. At the time, it was determined that Van Buskirk would not work on the Papyrus case. *Id.*

*Three months later,* Milbank raised the issue with Frommer, stating that Van Buskirk had received an e-mail containing confidential information regarding the case. *Id.* Although Van Buskirk did not recall receiving the e-mail, a redacted copy of it was provided to Frommer, and Frommer instituted its screen the same day that it received "actual notice" that NYSE confidences or secrets may have been disclosed to Van Buskirk. *Id.* at 281. The court in *Papyrus* found that the screen was timely erected because there was no real danger that Papyrus would have gained an unfair advantage over NYSE. *Id.* at 281–282.

Part of the rationale for this decision was that before the screen was put in place, Frommer had represented Papyrus for three months, and the risk of inadvertent disclosure was minimal. *Id.* at 281 n. 11. The court in *Papyrus* did note that Van Buskirk "never brought any files or documents *concerning the NYSE–Papyrus matter with him to Frommer"* and that the attorneys who worked on the case never had any substantive discussions with him about the case. *Id.* (citing *In re Del–Val Fin. Corp. Sec. Litig.,* 158 F.R.D. 270, 275 (S.D.N.Y.1994)).

Plaintiff states that Malley and Greener *did take* sixteen computer discs worth of information from WMB to BSK, and plaintiff argues that a major difference is that Malley was a partner in a small firm, while *all* of the cases deal with associates moving to other firms. First, the court notes that although it is true that Malley and Greener took files from WMB, Malley states in his affidavit that he never accessed computer files relating to HEI or this action. Malley Aff. ¶¶ 9–10. The court would also point out that the *Del–Val* case dealt with a *partner* in a firm that actually represented the adverse defendants in an SEC matter. The court in *Del–Val* also found that the screen, al-

though not erected immediately, was sufficient, particularly because the attorney did not bring any files *regarding his representation of the parties in question,* and he *never discussed* any confidential information with his new partners.

Plaintiff argues that what was on the computer discs that Malley and Greener took is "irrelevant," because clearly the two attorneys took a great deal of information from the Ithaca office of WMB, and also communicated important financial information about WMB to BSK even *before* they left WMB. Plaintiff argues that it is the financial information about WMB that will give BSK an advantage in this law suit.

Plaintiff argues that the court should assume that all manner of confidential information was imparted to BSK prior to the screen being erected and that the court should presume that HEI material was included in that information. Plaintiff also argues that it does not have to show that BSK actually received the information, but rather only that it could have received the information. However, as stated above, the irrebuttable presumption is that an attorney who formerly "represents" a client will have obtained secrets and confidences of the client. *Papyrus,* 325 F.Supp.2d at 277. The other presumption is that if an attorney's *firm* "represents" a client, then the attorney, whether he actually worked on the file or not, will have had access to client confidences and secrets. *Id.* Plaintiff is not required to show that the attorney actually received the information. *Id.* This first set of presumptions operates to disqualify *only* the individual attorney. The issue of whether BSK could have received the information involves the analysis of additional factors, including the screen and the extent of the possibility that "client confidences" could have been revealed intentionally or inadvertently to BSK.

The fact that Malley participated in the meeting and received the e-mail regarding this case certainly shows that he had "access" to confidential information regarding the case, even if he does not recall the specifics. The court would point out that another e-mail submitted by plaintiff in its *in camera* submission shows that Malley never originally voted on whether to take the HEI case.[4] He was sent a follow-up e-mail stating that the partners had not heard from him regarding his opinion. It is unclear whether he ever responded to the second inquiry. In any event, because of the above presumptions, this court does not hesitate to find that Malley *himself* would be disqualified from representing the defendants. BSK does not argue otherwise.

The next presumption is that the attorney will share any confidences with his new firm. *Id.* at 277. When analyzing whether Malley's disqualification should be imputed to BSK, however, the presumption of *shared* secrets is *rebuttable,* and is generally rebutted by the screen. *Id.* There are other considerations involved, however. In *Papyrus* the court stated that the "touchstones of the imputation inquiry are the significance of the prohibited lawyer's involvement in and knowledge of the former client's confidences or secrets," including the degree to which the tainted attorney represented the former client, the recency of the tainted attorney's employment, the attorney's recollection of any confidential information, whether the attorney actually shared the information

---

4. This part of the *in camera* submission does not concern any confidential client informa- tion.

with co-workers, and the circumstances of any actual receipt of the confidential information. *Id.* at 278–280.

Plaintiff spends a great deal of time discussing the fact that attorneys Greener and Malley took sixteen discs of material, and that they attempted to steal clients from WMB, thus, they must have revealed confidences and secrets of WMB clients to BSK when the sixteen discs were uploaded onto the Ithaca server which was at the time, located in Syracuse. At oral argument, when plaintiff's counsel was asked whether any HEI information was on those discs, he stated "probably, but we can't be certain." Transcript (T) at 63. (Dkt. No. 64). Counsel then stated that the reason they could not be certain was that Malley copied all the files from the WMB computer and then erased the files from the computer, so it was impossible to tell what was actually taken. That statement did not answer the court's question of whether there is HEI material *on the discs themselves,* not what was originally on WMB's computer that Malley erased.

Later plaintiff's counsel stated that the 300 page index of documents that are on the discs "does not specifically include HEI documents," but once again stated that they had no way to test the accuracy of this because the original computer files had been erased. (T. 66). The fact remains that it appears that the discs themselves do not contain HEI documents or the documents could have been located on the discs. Plaintiff's counsel implies that BSK could have loaded the information onto their computer and erased some information prior to returning the discs. That would be the only way that confidential HEI information could have been uploaded to the BSK computer, but not appear on the discs that were returned. The other option would be that the files were never put on the discs, but were deleted by Malley or Greener from the WMB computer.

WMB has sued Mr. Greener in New York State Supreme Court, alleging a variety of state law violations in connection with his departure from WMB. Mr. Malley is not a defendant in that action, but he, along with BSK are named throughout the complaint. Copies of the State Court papers have been attached to plaintiff's motion to disqualify. On June 4, 2004, WMB obtained a temporary restraining order in that case, and on June 16, 2004 WMB obtained a preliminary injunction on consent, preventing any use or destruction of client files taken from WMB and preventing contact with specified WMB clients.

The court would point out that the temporary restraining order in the State Court action against Mr. Greener was signed June 4, 2004, and the discs were returned to WMB by Greener's attorney shortly thereafter. BSK was not representing the defendants in this action at the time that the discs were returned to WMB, thus, even assuming that BSK would, (which this court in no way assumes) have deleted materials prior to returning the discs, BSK would have had no reason to choose HEI materials to delete. If as plaintiff's counsel says, these sixteen discs contain an *enormous amount of information,* the chances of deleting this specific information or of locating or distributing HEI materials, when neither Malley nor Greener worked on the case, and BSK was not representing any party connected to the case are *very slight.* It would also be extremely coincidental for all the information to be copied onto sixteen discs and other information including HEI material, to have been simply deleted from the WMB computer without having been copied to the discs.

In an effort to further support the argument that confidential information of all

sorts, and not only from cases in which Malley and Greener were involved, was taken from WMB, plaintiff alleges that discussions were held between BSK attorneys and Malley and Greener about bringing clients to BSK from WMB. A review of the e-mails submitted with plaintiff's motion shows that in fact, BSK expected Malley and Greener to bring clients with them. However, the e-mails and the subsequent contract between BSK and Malley show that the clients that were being discussed were those that in Malley and Greener's view were "personal clients", for which Malley and Greener had "client contact and billing responsibility." Plaintiff's Ex. H. While, once again, this court makes *no* finding as to whether the actions of either attorney were proper, unethical, or ultimately in violation of state law or a contract they may have had with WMB, it does not appear that HEI was ever a subject of discussion or negotiation. Neither Malley nor Greener had "client contact or billing responsibility" for HEI. In fact, the court notes that specific companies were made the subjects of the state court injunction, and HEI was not included in the list of companies that Greener agreed not to contact. Whether Malley and Greener took information other than information regarding this action is not relevant to imputing disqualification in this action to BSK.

Malley and Greener left WMB for BSK on May 1, 2004. Even assuming that the information was loaded onto the computer immediately, it was on the BSK computer for approximately one month prior to the issuance of the TRO. The risk of even inadvertent disclosure of *any* specific information during this time about this client or about this litigation, assuming that any existed in the amount of information that is allegedly on those discs, is *slight.*

Plaintiff also argues that even if there were no information on the discs regarding HEI, there were discussions between Malley, Greener, and attorneys from BSK about WMB's financial structure. If plaintiff's counsel is referring to the e-mails sent from these two attorneys regarding salaries and costs, the court notes that the e-mails do not mention any specific WMB attorneys, and these statements appear to be estimates of the revenue and expenses that could be expected if BSK were to open an Ithaca office. The e-mails noted that the figures were estimates "based on" actual information. This information had nothing to do with HEI or the litigation. Plaintiff's argument is that the fact that this information was exchanged between Malley, Greener and BSK would prejudice WMB in this action because BSK would be aware of WMB revenues and expenses and would know how much WMB could lend its financial support to a contingency fee case.

■ The court notes that the "financial structure" of WMB is *not a client confidence,* and that both client names and fee arrangements have been generally held *not* to be privileged information. *See Funke v. Life Financial Corp.,* 99 Civ. 11877, 2003 WL 21005246, 2003 U.S. Dist. LEXIS 7237, *2 (S.D.N.Y. April 30, 2003)(citing *inter alia Vingelli v. United States Drug Enforcement Agency,* 992 F.2d 449, 452 (2d Cir.1993)); *Sony Corp. of America v. Soundview Corp. of America,* 00–CV–754, 2001 WL 1772920, *2–3, 2001 U.S. Dist. LEXIS 23220, *14–16 (D.Conn. Oct. 23, 2001). Thus, the fact that Malley and Greener discussed their or anyone else's salary prior to leaving the firm, whether proper or not, whether in violation of a contract or not, is irrelevant to the issue in this action because firm finances are not client confidences. The fact of the contingency fee nature of this action was revealed in filed documents in

this case, and any law firm taking this case will be aware of the nature of the fee. Plaintiff's assertion that BSK will derive an advantage over WMB with this knowledge is not supported. The implication is that if BSK knows how much WMB is willing to devote to the case, BSK will use that to its advantage during the litigation. Once again, even if this were the case, and the court would not assume that any firm would attempt to improperly prolong proceedings [5], this would not be using a client confidence adversely to a former client.

It appears, however, that any financial information dealt with a limited number of attorneys in one city in which WMB had an office. There is no indication that the revenues of the entire firm or the financial structure of the entire firm were discussed or that this information would give BSK an unfair advantage in this litigation. Thus, given the timely screen that has been put in place, the fact that neither Malley nor Greener were involved in the HEI litigation or the HEI patent, that any information that Malley may have been privy to was given to him more than one year prior to BSK entering this case, and several months prior to Malley and Greener leaving WMB, the fact that neither Malley nor Greener were thereafter involved in any aspect of the HEI litigation, the state court injunction issued shortly after the attorneys' arrival at BSK, and the slight chance that any information *relevant to this action* was distributed to the attorneys at BSK, this court finds that Malley's disqualification should not be imputed to BSK.

This court must reiterate that it is *not* making a finding of the propriety or impropriety of Malley and Greener's actions. That very subject is the issue in the state court law suit. *This court is not in a position either to condone actions or punish attorneys for actions that do not affect the case before this court.* The only issue relevant in this action is whether BSK will obtain an unfair advantage in this litigation, and the court finds that it will not. As in *Papyrus,* there is no real danger that defendants have gained or will gain an unfair advantage over plaintiff.

Although plaintiff alleges that the appearance of impropriety supports disqualification, this court has found that there is no possibility that the trial will be tainted based upon anyone revealing or using client confidences. When there is no possibility of the trial being tainted, the appearance of impropriety alone "is too slender a reed upon which to rest a disqualification order except in the rarest cases." *Board of Educ. v. Nyquist,* 590 F.2d 1241, 1247 (2d Cir.1979).

**WHEREFORE,** based on the findings above, it is

**ORDERED,** that plaintiff's motion to disqualify BSK as counsel for the Catch-a-Call defendants (dkt. no. 52) is **DENIED.**

## ORDER ON RECONSIDERATION

Presently before this court is plaintiff's motion for reconsideration of this court's order dated September 23, 2004, denying plaintiff's motion to disqualify the Bond, Schoeneck & King (BSK) law firm from representing any of the defendants in this action. (Dkt. No. 82). BSK has filed its opposition to the motion. (Dkt. No. 87). For the following reasons, this court will deny plaintiff's motion for reconsideration. The court assumes familiarity with the ba-

---

**5.** In fact, such behavior is prohibited and sanctionable under federal law. 28 U.S.C. § 1927.

sic facts as stated in my September 23, 2004 order.

## DISCUSSION

 The standard for reconsideration is strict, and a motion for reconsideration will be denied unless the moving party can point to controlling decisions or facts that the court "overlooked" and that might "reasonably be expected to alter the conclusion reached by the court." *Shrader v. CSX Transp., Inc.,* 70 F.3d 255, 257 (2d Cir.1995). Clearly, if the standard requires the factual matters to have been overlooked, they must have been before the court in the underlying motion. *See Eisemann v. Greene,* 204 F.3d 393, 395 n. 2 (2d Cir.2000). The prevailing law in the Northern District of New York recognizes that a motion for reconsideration may be granted in three situations: (1) an intervening change in the controlling law; (2) the availability of new evidence; and (3) the need to correct a clear error of law or prevent manifest injustice. *United States v. Gagnon,* 250 F.Supp.2d 15, 18 (N.D.N.Y. 2003) (citations omitted).

The purpose for this high standard on motions to reconsider is to ensure finality and "prevent the practice of a losing party examining a decision and then plugging in the gaps of the lost motion with additional matters." *Id.* (citing *Ruiz v. Commissioner of the Dep't of Transp. of the City of New York,* 687 F.Supp. 888, 890 (S.D.N.Y. 1988)). A motion for reconsideration is not a substitute for an appeal. *Allied Maritime, Inc. v. The Rice Corp.,* 361 F.Supp.2d 148, 149 (S.D.N.Y.2004)(citing *RMED Int'l, Inc. v. Sloan's Supermarkets, Inc.,* 207 F.Supp.2d 292, 296 (S.D.N.Y. 2002)).

Plaintiff first argues that even if this court properly determined that BSK first became aware of the potential conflict of interest on June 8, 2004, BSK still could have altered the computer discs that Attorneys Greener and Malley took from WMB. Plaintiff then argues that this court was wrong in its factual determination of when BSK became aware of the potential conflict of interest in this case, and thus did not properly analyze whether the screen in this case could be effective. Plaintiff argues that BSK had notice of the potential conflict much earlier, thus making incorrect my determination that the chances of BSK "tampering" with the discs that it ultimately returned to WMB "very slight."

Plaintiff states that the court "appears to have determined" that BSK first learned of this action on June 8, 2004 when BSK counsel was contacted by one of the Catch-a-Call defendants' counsel regarding representation of four of the defendants in this action. Plaintiff then argues that the discs were not returned to WMB until June 11, 2003, three days after the first contact, allowing BSK "ample motive and time" to modify the discs and index, prior to returning the materials to WMB. Plaintiff forgets to mention, however, that the state court injunction was issued on June 4, 2004, and on June 11, 2004, the discs were no longer in BSK's possession, but were returned to WMB by Greener's attorney in the state court action against Greener. Greener's attorney is not from BSK.

Plaintiff then argues that the court was wrong in determining that June 8, 2004 was the date that BSK learned of the HEI litigation. Plaintiff attempts to support this argument by introducing *new* information regarding an alleged contact between defendants and BSK occurring as early as April 12, 2004, which would have been before Malley and Greener left WMB. This assumption is based upon inferences derived from three April 12, 2004 e-mails, two from Attorney George McGuire to

James Mackin, the managing attorney at BSK and one from Attorney Mackin in response to McGuire. Plaintiff's Ex. B. Plaintiff submits an affidavit of Attorney James Muldoon of WMB in support of these assumptions.

A review of the April 12, 2004 e-mails shows that Attorney McGuire told Attorney Mackin that Steven Malak, General Counsel at a company called PPC "just" called McGuire to refer over a matter unrelated to PPC. Plaintiff infers that this "matter" was the defense of the HEI case. Attorney Muldoon makes this inference because he states in his affidavit that he received a telephone call from Attorney Malak of PPC in mid-April of 2004, advising Attorney Muldoon that Malak had received a call from RadioShack (one of the Catch–a–Call defendants) asking for a referral of Syracuse patent litigation counsel. Muldoon Aff. ¶ 3. Attorney Malak told Attorney Muldoon that Malak gave RadioShack Muldoon's name, but RadioShack informed Malak that Muldoon's new law firm was already representing plaintiff in the same case. *Id.*

Attorney Muldoon states that "in the same telephone conversation", Attorney Malak told Muldoon that Malak had "recently" spoken with George McGuire, a former colleague of Attorney Muldoon's at Hancock & Estabrook, and Malak commented that the moves of local patent attorneys between firms in Syracuse was like a game of "musical chairs". *Id.* ¶ 4. Although Malak did not specify the subject of his conversation with Attorney McGuire, Mr. Muldoon assumes that the subject must have been the HEI litigation based on the fact that RadioShack had asked for a referral of local counsel, the reference to "musical" firms, and the fact that the McGuire e-mail states that Malak had called him about a matter unrelated to PPC.

Plaintiff also argues that its assumption regarding the date that BSK became aware of a potential conflict is further supported by the fact that the Attorney Muldoon heard in late April, 2004 from an un-named attorney at Hiscock & Barclay Law Firm that Hiscock was also in contention against BSK for the Catch–a–Call representation. Muldoon Aff. ¶ 5. Plaintiff's counsel then argues that Attorney McGuire "avoided" the disclosure regarding BSK's first contact with "any defendant in this case" by stating that he was first contacted by International Electronics, Inc. (IEI)(another Catch–a–Call defendant) in this matter on June 8, 2004. Plaintiff is implying that although IEI contacted McGuire in June, RadioShack may have contacted McGuire in April of 2004.

BSK disputes these inferences, and Attorney McGuire responds in his affidavit that the first time he "learned of *this case* " was on June 8, 2004, and that he met with former defense counsel in New York City on June 15, 2004. McGuire Aff. ¶¶ 3, 5. Attorney McGuire states that Hiscock & Barclay was also considered for defense representation, but contrary to Attorney Muldoon's affidavit, the Hiscock & Barclay firm was not contacted until June 9, 2004, and two attorneys from Hiscock & Barclay met with the same former defense counsel on June 17, 2004. McGuire Aff. ¶ 7. Attorney McGuire states that he telephoned one of those two Hiscock & Barclay attorneys on the day that he signed this affidavit to confirm these dates. *Id.*

Attorney McGuire also states in his affidavit that the matter that was referred to him by Attorney Malak had nothing to do with the HEI litigation, and instead involved an individual PPC employee who was interested in having a new idea reviewed by a patent attorney. McGuire Aff. ¶ 11. Attorney McGuire also avers that Mr. Malak did not mention the HEI

case to McGuire, nor did Malak mention that RadioShack was looking for counsel.

None of this information was before me in the prior motion to disqualify, notwithstanding two prior affidavits by Attorney Muldoon in support of the original motion. According to Attorney Muldoon's affidavit in support of reconsideration, this e-mail has been in WMB's possession since receiving it from BSK on July 1, 2004, pursuant to a subpoena from WMB dated June 4, 2004. Muldoon Aff. ¶ 6. Basically, WMB has introduced evidence that was available to WMB at the time of the prior motion, but that it did not present to this court. Although this evidence is "new" to the court, it is not "newly discovered" by plaintiff's counsel. Thus, plaintiff has also not met the requirements for reconsideration based on facts that the court "overlooked" since none of these facts were before this court in the initial motion to disqualify.

Plaintiff also argues that the court made an error of law and errors in the application of the allegedly "unrebutted" facts to the law. Although plaintiff argues that Malley's recollection of the case is "irrelevant as a matter of law", that may be true with respect to **his disqualification**, a matter that is not in dispute, but not true with respect to whether the disqualification is imputed to the new law firm. The court in *Papyrus Technology Corp. v. New York Stock Exchange, Inc.*, 325 F.Supp.2d 270, 279 (S.D.N.Y. June 29, 2004) specifically listed the "attorney's recollection" as **one of the factors** that the court considers in the imputation inquiry.

The court in *Papyrus* stated "a party may attempt to rebut the presumption of shared knowledge through affidavits setting-forth **the tainted attorney's recollection of any confidential information and whether the attorney shared such information with co-workers.**" *Id.* (citing *In re Del–Val Fin. Corp. Sec. Litig.*, 158 F.R.D. 270, 274 (S.D.N.Y.1994))(emphasis added). The court in *Del–Val* also specifically considered that the attorney in question had never spoken to anyone at his new firm about the case and had "no recollection of any confidential information." 158 F.R.D. at 274. Thus, this court finds no "clear error of law" to correct in its September 23, 2004 order. Any disagreement that plaintiff has regarding the application of the law to the facts is a matter for plaintiff's appeal of this court's order.

Plaintiff also submits pages of the computer disc index of the documents taken from WMB by Attorneys Malley and Greener. Plaintiff alleges that the index itself shows that the disc contained information regarding another WMB client, where BSK represented an adverse client. Plaintiff argues that because BSK "accepted" the information, the screen was not effective.

Once again, although WMB had this information prior to its initial motion to disqualify since it had the computer discs in June of 2004, it is the first time that this information is before me. These files, regardless of their content, have nothing to do with HEI, and BSK disputes plaintiff's assertion that the information was "accepted" by BSK and that BSK's "acceptance" of this information means that the screen was ineffective. Contrary to plaintiff's assertion that BSK admits that it uploaded the information on the "BSK" computer, BSK claims that the discs were loaded onto a server that was dedicated to the *Ithaca* office, and the files were not available to any of the attorneys in the *Syracuse* office. McGuire Aff. ¶ 17. Attorney McGuire states that neither he, nor co-counsel Attorney Nocilly have ever attempted to gain access to the files. *Id.* It is not this court's function on reconsideration to merely re-analyze the facts in light

of any "new" information the parties continue to present.

As I pointed out in the September 23, 2004 order, it is not this court's function to determine whether Attorneys Malley and Greener violated any state laws or contract provisions that they had with WMB when they took files from WMB's computers. This court's function was to determine whether the trial *in this case* would be tainted. Based on all the submissions, I find that plaintiff has not met the standard for reconsideration in this action.

**WHEREFORE,** it is hereby

**ORDERED,** that plaintiff's motion for reconsideration (dkt. no. 82) is **DENIED,** and it is

**ORDERED,** that the Catch–a–Call defendants have until **November 15, 2004** within which to file opposition papers to plaintiff's appeal of this court's September 23, 2004 order, and it is

**ORDERED,** that **December 10, 2004** at **10:00 a.m.** before Judge Hurd in Utica is set as the new return date for the appeal. The attorneys should contact Judge Hurd's Courtroom Deputy to determine whether oral argument will be entertained.